E-FILED
Friday, 08 November, 2013  02:38:17 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
Urbana Division

SARAH PYLES,

    **Plaintiff,**

v.                                                                                            Case No. 13-2114

VILLAGE OF MANTENO, CHAD GAGNON, MANTENO POLICE OFFICER STAR 7584, JASON FORBES, MANTENO POLICE OFFICER STAR 2742, AND CORNELIUS MONROE, ILLINOIS STATE POLICE OFFICER STAR 4561,

    **Defendants.**

## REPORT AND RECOMMENDATION

    In May 2013, Plaintiff Sarah Pyles filed a Complaint (#1) against Defendants Village of Manteno, Chadd Gagnon, Jason Forbes, and Cornelius Monroe, alleging federal claims of unreasonable seizure, failure to intervene, and violations of due process and equal protection, and state claims of malicious prosecution and indemnification. Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff has raised federal claims pursuant to 42 U.S.C. § 1983. The Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

    In July 2013, Defendant Cornelius Monroe filed a Motion To Dismiss (#12). In August 2013, Plaintiff filed a Response to Defendant Monroe's Motion To Dismiss (#15). After reviewing the parties' pleadings and memoranda, the Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's Motion To Dismiss (**#12**) be **DENIED.**

## I. Background

The following background is taken from the complaint. Plaintiff alleges that on August 12, 2011, she became lost while driving home. (#1, ¶¶ 10-11.) Plaintiff pulled into a gas station parking lot to call a friend to come and pick her up. (#1, ¶ 12.) An attendant at the gas station called the Manteno Police Department to report that Plaintiff was sitting in her parked car. (#1, ¶ 14.) Eventually, two Manteno police officers, Defendants Gagnon and Forbes, arrived on the scene and spoke with Plaintiff. (#1, ¶¶ 15-18.) Gagnon then told Plaintiff that he would transport her to the police station to take a Breathalyzer test. (#1, ¶¶ 21, 24.) Gagnon had Plaintiff sit in the front seat of the police car and during the trip to the station Plaintiff performed oral sex on Gagnon. (#1, ¶¶ 25, 31.) After administering the Breathalyzer test at the station, Gagnon allegedly sexually assaulted Plaintiff without her consent while Forbes stood by and failed to intervene or prevent the assault. (#1, ¶¶ 35, 39-40.) Gagnon then drove Plaintiff back to the gas station, gave Plaintiff her car keys, and allowed her to drive away. (#1, ¶¶ 42-43.) Plaintiff subsequently reported the alleged sexual assault and a rape kit was administered at the hospital. (#1, ¶¶ 45-47.) Defendant Monroe, an Illinois State Police officer, and Master Sergeant Poortinga of the Illinois State Police subsequently interviewed Plaintiff and investigated her allegations, including sending various items and DNA samples to a forensic lab for testing. (#1, ¶¶ 48-51.)

On September 13, 2011, Defendant Monroe received a report from the forensic lab indicating that no saliva had been found on Gagnon's underwear. (#1, ¶ 62.) On October 26, 2011, Monroe received a report from the same lab indicating that the DNA found on the rape kit excluded Gagnon and Forbes. (#1, ¶ 63.) In December 2011, Monroe appeared before a grand jury and testified that no saliva had been found on Gagnon's underwear and the DNA found in the rape kit excluded Gagnon and Forbes. (#1, ¶¶ 70-72.) The grand jury then returned an indictment against Plaintiff. (#1, ¶ 73.)

In February 2012, Defendant Monroe received a new report from the forensic lab (the February forensic report) indicating that Plaintiff's DNA had been found on Gagnon's underwear. (#1, ¶ 74.) Between February and October 2012, Monroe withheld this information from the prosecuting attorney. (#1, ¶ 75.) In October 2012, Monroe again testified before the

grand jury, but he did not disclose the February forensic report implicating Gagnon. (#1, ¶¶ 79-81.) The grand jury then returned a second indictment against Plaintiff. (#1, ¶ 82.)

While preparing for trial, Plaintiff's attorney discovered the February forensic report, which indicated that Plaintiff's DNA had been found on Defendant Gagnon's underwear. (#1, ¶¶ 84-86.) He informed the assistant state's attorney and the State dismissed the charges against Plaintiff. (#1, ¶¶ 87, 89.)

The complaint alleges five counts. Count I, against Defendant Gagnon, alleges unreasonable seizure. Count II, against Defendant Forbes, alleges failure to intervene in the unreasonable seizure. Count III alleges that Defendant Gagnon violated Plaintiff's right to equal protection.

In Count IV, Plaintiff alleges that Defendant Monroe violated her right to due process by "engag[ing] in arbitrary government action that deprived her of her liberty and was so malfeasant as to shock the conscience." (#1, ¶ 112.) Plaintiff alleges that Defendant's act of withholding the February forensic report amounted to a willful, wanton, and intentional obstruction of justice and deprivation of Plaintiff's due process rights.

In Count V, Plaintiff alleges a state law claim for malicious prosecution against Defendant Monroe. Plaintiff alleges that Defendant pursued felony charges against Plaintiff without probable cause and despite evidence indicating that Plaintiff's allegations of sexual assault were true.

Count VI, against the Village of Manteno, alleges an indemnification claim pursuant to 75 ILCS 10/9-102.

## II. Legal Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. It does not decide the merits of the case. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss, the complaint need only contain sufficient factual

allegations to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To satisfy this standard, the allegations in the complaint must, first, be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests,'" and, second, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (alteration omitted) (quoting *Twombly*, 550 U.S. at 554, 555).

In considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the pleadings. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). The Court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *AnchorBank*, 649 F.3d at 614. However, the Court will not accept as true mere legal conclusions, unsupported by factual allegations, or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

### III. Analysis

Defendant argues that the Court should dismiss Counts IV and V for failure to state a claim upon which relief may be granted. Defendant also argues that he is protected by the doctrine of qualified immunity as to Plaintiff's due process claims in Count IV.

#### A. Count IV: Due Process Violations

In Count IV, Plaintiff alleges that Defendant Monroe violated her right to due process. Plaintiff does not identify in the complaint whether she is alleging a violation of procedural or substantive due process. However, she has pleaded elements of both types of due process claims and in her memorandum, she clarifies that she intended to plead both procedural and substantive due process claims. *See Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (stating that, when considering a motion to dismiss, courts "may use [a party's] brief to clarify allegations in her complaint whose meaning is unclear").

4

### 1. Procedural Due Process

"To survive a motion to dismiss [a procedural due process claim, the plaintiff] must allege a plausible deprivation of a cognizable liberty or property interest without due process." *Santana v. Cook Cnty. Bd. of Review*, 779 F. Supp. 2d 830, 835 (N.D. Ill. 2011).

Here, Plaintiff has alleged a deprivation of her liberty. Plaintiff alleges that Defendant's withholding of the February forensic report resulted in an improper indictment that otherwise would not have occurred. Drawing all reasonable inferences in Plaintiff's favor, Plaintiff appears to allege that she was denied procedural due process when Defendant failed to produce exculpatory material that would have affected the outcome of the second indictment. The Court now considers whether Plaintiff has alleged a deprivation of her liberty interest.

In *Brady v. Maryland*, the Supreme Court stated that suppression of evidence by the prosecution violates due process if that evidence is (1) favorable to the accused and (2) "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Seventh Circuit has interpreted this ruling as having three elements: (1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material, meaning that there was "a reasonable probability that prejudice ensued." *Alexander v. McKinney*, 692 F.3d 553, 556 (7th Cir. 2012) (citing *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009)).

Regarding the first prong, "police who deliberately withhold exculpatory evidence, and thus prevent the prosecutors from complying with the obligations articulated in *Brady,* violate the due process clause." *Newsome v. McCabe,* 260 F.3d 824, 824 (7th Cir. 2001). Because Defendant failed to turn over evidence to the Assistant State's Attorney, the first prong is satisfied. Regarding the second prong, the evidence was favorable to Plaintiff because it corroborated her story and allegations, and it persuaded the prosecution to drop the charges against her.

Regarding the third prong, the fact that the charges were dropped before the trial began complicates matters. Defendant argues that because Plaintiff learned about the exculpatory

material in time to avoid a trial, no *Brady* violation occurred. Defendant's position represents a common judicial gloss of *Brady*: The phrase "material either to guilt or punishment" in *Brady* means that the evidence must have directly affected the outcome of the trial. *Brady*, 373 U.S. at 87. The Supreme Court has stated that "unless the omission deprived the defendant of a fair trial, there [is] no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose." *United States v. Agurs*, 427 U.S. 97, 108 (1976); *see Kyles v. Whitley,* 514 U.S. 419, 435 (1995) (stating that a *Brady* violation arises where "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict"); *Strickler v. Greene,* 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").

The Fourth, Sixth, Ninth, Tenth, and Eleventh Circuits, and the D.C. Circuit have endorsed this position. *See Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (stating that "alleged failures to disclose [exculpatory evidence] do not implicate constitutional rights where no constitutional deprivation results therefrom"); *McCune v. City of Grand Rapids,* 842 F.2d 903, 907 (6th Cir. 1988) (holding that where the criminal proceeding is terminated in an appellant's favor, the act of suppressing exculpatory evidence causes no injury); *Smith v. Almada*, 640 F.3d 931, 940 (9th Cir. 2011) (following the Supreme Court's standard in *Strickler*); *Morgan v. Gertz,* 166 F.3d 1307, 1310 (10th Cir. 1999) ("[T]he withholding or destruction of evidence violates a criminal defendant's constitutional rights only if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial."); *Flores v. Satz,* 137 F.3d 1275, 1278 (11th Cir. 1998) (finding no *Brady* violation in the face of an acquittal because *Brady* protects a defendant from an unfair trial and an acquitted defendant does not suffer the effects of an unfair trial); *Rogala v. District of Columbia*, 161 F.3d 44, 55-56 (D.C. Cir. 1998) (noting that there is no basis for a procedural due process claim unless the defendant is prejudiced by the breach of the duty to disclose and, in the absence of a criminal trial, the defendant cannot have been prejudiced). The Ninth Circuit has summarized the rationales underpinning the aforementioned circuits' positions: "[A]llowing *Brady*-based § 1983 claims without a conviction is not compelled by our circuit's case law, conflicts with other circuits' case

law and the central purpose of *Brady,* would render *Brady*'s materiality standard significantly less workable, and lacks a limiting principle." *Almada*, 640 F.3d at 945 (Gwin, J., concurring).

In contrast, the Seventh Circuit court appears to entertain the notion that a *Brady*-type due process claim could be available even when a defendant is acquitted or the charges are dismissed:

> The jury acquitted Alexander of the charges, and we have expressed doubt that an acquitted defendant can ever establish the requisite prejudice for a *Brady* claim. Nevertheless, we have entertained the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial.

*Alexander*, 692 F.3d 553, 556 (7th Cir. 2012) (citations omitted); *see also Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010) (reserving the question for another time and stating that the standard is "whether there is any evidence in the record that would show: (1) that the officers withheld materially favorable evidence from [the plaintiff], and (2) had the officers disclosed that evidence sooner, it would have altered the decision to go to trial"); *Bielanski v. County of Kane,* 550 F.3d 632, 644 (7th Cir. 2008) (holding that, theoretically, to state a *Brady* violation claim when the criminal trial ended in acquittal, the plaintiff would need to show that "the decision to go to trial would have been altered by the desired disclosure") (citing *Carvajal v. Dominguez,* 542 F.3d 561, 569 (7th Cir. 2008)); *Garcia v. City of Chicago,* 24 F.3d 966, 971 (7th Cir. 1994) (stating that, even though the defendant had not raised a *Brady* claim, "if the prosecutor fails to deliver exculpatory evidence to the defendant before trial, [the prosecutor] may run afoul of *Brady*"). Recently, the District Court for the Northern District addressed this issue and concluded that

> our circuit's case law does not foreclose [the plaintiff] from arguing that the proceedings in his case were prolonged by the individual Defendants' actions, in violation of his due process rights. Although the court expresses no opinion on [the plaintiff's] eventual ability to show that the prosecution would not have moved forward with the charges against him were it not for the individual Defendants' fabrication and withholding of evidence, he has sufficiently alleged that the individual Defendants' actions were material to the decision to prosecute him.

*Armour v. Country Club Hills*, 11 C 5029, 2012 WL 4499050, at *5 (N.D. Ill. Sept. 27, 2012). Because our circuit has not foreclosed the possibility that a *nolle prossed* or acquitted defendant

could have a viable *Brady* claim, the Court concludes that Plaintiff has alleged a plausible claim upon which relief can be granted for deprivation of her right to procedural due process.

### 2. Substantive Due Process

The basis of a substantive due process claim involves the arbitrary exercise of government power without reasonable justification. *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). The Supreme Court has emphasized that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights,* 503 U.S. 115, 129 (1992)). Consequently, the Supreme Court has adhered to a "shocks the conscience" test in determining whether executive conduct violates an individual's substantive due process rights. *See Rochin v. California*, 342 U.S. 165, 172-73 (1952) (concluding that the forced pumping of a suspect's stomach "shocks the conscience" and violates the "decencies of civilized conduct," thus offending due process). The Seventh Circuit conducts a two-pronged inquiry: To survive a motion to dismiss, Plaintiff must allege that the government's actions (1) were arbitrary and irrational and (2) shock the conscience. *Altman v. City of Chicago*, 99 C 6496, 2000 WL 1648932 , at *6 (N.D. Ill. Oct. 25, 2000).

Plaintiff's complaint alleges that Defendant Monroe's conduct of failing to disclose the February forensic report in order to secure a second grand jury indictment against Plaintiff constituted an "arbitrary government action that . . . was so malfeasant as to shock the conscience." (#1, ¶ 112.) Plaintiff also alleges that Defendant withheld this information to cover up for Defendants Gagnon and Forbes. The ultimate disclosure of this evidence resulted in the dismissal of the charges against Plaintiff.

Evaluating the complaint in the light most favorable to Plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in Plaintiff's favor, *see AnchorBank*, 649 F.3d at 614, the Court finds that Defendant Monroe's alleged conduct was sufficiently arbitrary and shocks the conscience. Defendant's arguments that (1) Plaintiff's substantive due process claim is in fact a hybrid Fourth Amendment claim, and thus governed by another constitutional provision and (2) Monroe had probable cause to pursue the first indictment

are unpersuasive.  Consequently, the Court finds that Plaintiff has stated a plausible claim upon which relief can be granted for violation of her substantive due process rights.

### 3.  Qualified Immunity

Defendant Monroe next argues that he is entitled to qualified immunity on the due process claims because Plaintiff has not identified any constitutional right that he has violated. Qualified immunity is intended to protect federal and state officials from civil liability and suit "unless a plaintiff can plead facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Courts have discretion to decide how to approach these two inquiries.  *al-Kidd*, 131 S. Ct. at 2080.

Consistent with the preceding discussion of Plaintiff's due process claims, the Court concludes that Plaintiff has alleged that Defendant Monroe violated her constitutional rights by failing to disclose the February forensic report to the grand jury.  The Court must now decide whether this right was clearly established at the time Defendant withheld this information.

> "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Regarding both of Plaintiff's due process claims, the appropriate question is whether a reasonable officer could have believed that withholding potentially exculpatory evidence from a grand jury to secure a criminal indictment was lawful, in light of clearly established law and what the officer knew at the time.  The Court concludes that a reasonable officer would have believed that such an action was unlawful.  It was clearly established at the time of the investigation, at the time Monroe received the February forensic report, and during the grand jury proceedings when Monroe withheld information, that "investigators who withhold

exculpatory evidence from defendants violate the defendant's constitutional due process right." *Manning v. Miller*, 355 F.3d 1028, 1034 (7th Cir. 2004); *accord Newsome*, 260 F.3d at 824 (stating that it was clearly established "that police who deliberately withhold exculpatory evidence, and thus prevent the prosecutors from complying with the obligations articulated in *Brady*, violate the due process clause").

The Court has discussed the ambiguity in the Seventh Circuit case law as to whether a plaintiff can assert a *Brady*-type claim under the circumstances of this case. However, this ambiguity does not affect the Court's conclusion regarding qualified immunity because, as noted above, the question is whether the right at issue was clearly established "at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080. The ambiguity in the case law only comes into play when no trial is held, which does not effect the lawfulness of Defendant's conduct "at the time of the challenged conduct" in this case.

Accordingly, the doctrine of qualified immunity does not immunize Defendant Monroe from suit as to Plaintiff's procedural and substantive due process claims and the Court recommends denying the motion to dismiss Plaintiff's due process claims.

### B.  Count V:  Malicious Prosecution

Defendant next argues that Plaintiff has failed to state a claim for malicious prosecution because she has failed to plead all of the elements of a malicious prosecution. There are five elements to a common law malicious prosecution claim: (1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) probable cause was lacking for the proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *See Hurlbert v. Charles,* 938 N.E.2d 507, 512 (Ill. 2010). The absence of any one of these five elements bars a plaintiff from pursuing the claim. Here, Defendant argues that Plaintiff has failed to plead the third, fourth, and fifth elements.

Regarding the third element, Plaintiff alleges that Defendant instituted felony charges against her without probable cause. "Probable cause is a state of facts . . . that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion

that the accused committed the offense charged." *Mack v. First Sec. Bank of Chi.*, 511 N.E.2d 714, 717 (Ill. App. Ct. 1987). The evidence available to Defendant at the time of the first indictment – the absence of saliva in Gagnon's underwear and the DNA results excluding Gagnon and Forbes – supported a reasonable suspicion that Plaintiff had obstructed justice by making false statements. However, nearly eight months before the second indictment, Defendant received the February forensic report which indicated that Plaintiff's DNA had been found on Defendant Gagnon's underwear. Such evidence would not "lead a person of ordinary care and prudence to believe or to entertain an *honest and sound suspicion*" that Plaintiff had made false statements. *Id.* at 717 (emphasis added). Consequently, Defendant arguably lacked probable cause to continue with the proceeding once he received the February forensic report.

Regarding the fourth element, malice is defined as prosecution "for any reason other than to bring a party to justice." *Rodgers v. Peoples Gas, Light & Coke Co.,* 733 N.E.2d 835, 842 (Ill. 2000). Plaintiff alleges that Defendant Monroe "acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights." (#1, ¶ 90.) Plaintiff also alleges that Defendant withheld the February forensic report in an attempt "to cover for Defendants Gagnon and Forbes." (#1, ¶ 54.) The absence of probable cause to continue the proceedings suggests that Defendant acted for another reason than "to bring a party to justice." *Id.* at 842. As a result, the Court finds that Plaintiff has sufficiently plead the fourth element of malicious prosecution.

Regarding the fifth element, Plaintiff has alleged that she suffered damages including "loss of physical liberty, physical pain and suffering, emotional distress and pecuniary damages including attorneys' fees, monies posted for bond, and lost wages." (#1, ¶ 91.) Drawing all reasonable inferences in Plaintiff's favor, the Court finds that at least some of these damages were a direct result of the second indictment and the proceedings after the February forensic report was released. The Court therefore rejects Defendant's argument that Plaintiff has not pleaded that she suffered damages.

Based on the foregoing analysis, the Court concludes that Plaintiff has alleged a claim of malicious prosecution that is plausible on its face, and recommends denying Defendant's motion to dismiss Count V.

### IV.  Summary

For the reasons state above, the Court recommends that Defendant's Motion To Dismiss (**#12**) be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) working days after being served with a copy of the Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 8th day of November, 2013.

_____s/DAVID G. BERNTHAL_____\
UNITED STATES MAGISTRATE JUDGE

\