UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

SARAH PYLES,

      Plaintiff,

v.

VILLAGE OF MANTENO, CHADD
GAGNON, MANTENO POLICE OFFICER
STAR 7584, JASON FORBES, MANTENO
POLICE OFFICER STAR 2742, AND
CORNELIUS MONROE, ILLINOIS STATE
POLICE OFFICER STAR 4561,

      Defendants.

Case No. 13-2114

**REPORT AND RECOMMENDATION**

      In May 2013, Plaintiff Sarah Pyles filed a Complaint (#1) against Defendants Village of Manteno, Chadd Gagnon, Jason Forbes, and Cornelius Monroe, alleging federal claims of unreasonable seizure, failure to intervene, and violations of due process and equal protection, and state claims of malicious prosecution and indemnification. Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff has raised federal claims pursuant to 42 U.S.C. § 1983. The Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

      In July 2013, Defendant Cornelius Monroe filed a Motion to Dismiss (#12). His motion was denied by the Court via an Order (#24) entered on December 6, 2013. In August 2013, Defendants Chadd Gagnon and Jason Forbes filed a Motion to Dismiss (#18) pursuant to Federal Rule of Civil Procedure 12(b)(6) and a supporting Memorandum of Law (#19). In September 2013, Plaintiff filed a Response to Defendants Gagnon and Forbes's Motion to Dismiss (#20). After reviewing the parties' pleadings and memoranda, the Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants Gagnon and Forbes's Motion to Dismiss (#18) be **DENIED**.

I.    Background

The following background is taken from the complaint. Plaintiff alleges that on August 12, 2011, she became lost while driving home. (#1, ¶¶ 10-11.) Plaintiff pulled into a gas station parking lot to call a friend to come and pick her up. (#1, ¶ 12.) An attendant at the gas station called the Manteno Police Department to report that Plaintiff was sitting in her parked car. (#1, ¶ 14.) Eventually, two Manteno police officers, Defendants Gagnon and Forbes, arrived on the scene and spoke with Plaintiff. (#1, ¶¶ 15-18.) Gagnon then told Plaintiff that he would transport her to the police station to take a Breathalyzer test. (#1, ¶¶ 21, 24.) Gagnon had Plaintiff sit in the front seat of the police car and during the trip to the station Plaintiff performed oral sex on Gagnon. (#1, ¶¶ 25, 31.) After administering the Breathalyzer test at the station, Gagnon allegedly sexually assaulted Plaintiff without her consent while Forbes stood by and failed to intervene or prevent the assault. (#1, ¶¶ 35, 39-40.) Gagnon then drove Plaintiff back to the gas station, gave Plaintiff her car keys, and allowed her to drive away. (#1, ¶¶ 42-43.) Plaintiff subsequently reported the alleged sexual assault and a rape kit was administered at the hospital. (#1, ¶¶ 45-47.) Defendant Monroe, an Illinois State Police officer, and Master Sergeant Poortinga of the Illinois State Police subsequently interviewed Plaintiff and investigated her allegations, including sending various items and DNA samples to a forensic lab for testing. (#1, ¶¶ 48-51.)

On September 13, 2011, Defendant Monroe received a report from the forensic lab indicating that no saliva had been found on Gagnon's underwear. (#1, ¶ 62.) On October 26, 2011, Monroe received a report from the same lab indicating that the DNA found on the rape kit excluded Gagnon and Forbes. (#1, ¶ 63.) In December 2011, Monroe appeared before a grand jury and testified that no saliva had been found on Gagnon's underwear and the DNA found in the rape kit excluded Gagnon and Forbes. (#1, ¶¶ 70-72.) The grand jury then returned an indictment for two felony counts of disorderly conduct against Plaintiff. (#1, ¶ 73.)

In February 2012, Defendant Monroe received a new report from the forensic lab (the February forensic report) indicating that Plaintiff's DNA had been found on Gagnon's underwear. (#1, ¶ 74.) Between February and October 2012, Monroe withheld this information from the prosecuting attorney. (#1, ¶ 75.) In October 2012, Monroe again testified before the

grand jury, but he did not disclose the February forensic report implicating Gagnon. (#1, ¶¶ 79-81.) The grand jury then returned a second indictment against Plaintiff. (#1, ¶ 82.)

While preparing for trial, Plaintiff's attorney discovered the February forensic report, which indicated that Plaintiff's DNA had been found on Defendant Gagnon's underwear. (#1, ¶¶ 84-86.) He informed the assistant state's attorney and the State dismissed the charges against Plaintiff. (#1, ¶¶ 87, 89.)

The complaint alleges five counts. Count I, against Defendant Gagnon, alleges unreasonable seizure. Plaintiff alleges that Defendant Gagnon seized Plaintiff, did not have a reasonable suspicion that she was involved in any criminal activity at the time, and did not have any other legal justification to seize Plaintiff. (#1, ¶¶ 96-98.) Therefore, Plaintiff argues, Plaintiff's Fourth Amendment right to be free from unreasonable searches was violated.

Count II, against Defendant Forbes, alleges failure to intervene in the unreasonable seizure allegedly committed by Defendant Gagnon. Plaintiff alleges that Defendant Forbes "had an opportunity to intervene" while Plaintiff was subjected to the alleged unreasonable seizure, but chose not to, and that he was "deliberately indifferent" to her Fourth Amendment right to be free from such seizure. (#1, ¶¶ 103, 104.)

Count III, against Defendant Gagnon, alleges a violation of Plaintiff's Equal Protection Rights. In Count IV, Plaintiff alleges that Defendants Gagnon, Forbes, and Monroe violated her right to due process by "engag[ing] in arbitrary government action that deprived her of her liberty and was so malfeasant as to shock the conscience." (#1, ¶ 112.) Plaintiff alleges that Defendants Gagnon and Forbes's act of withholding information regarding the sexual assault of Plaintiff constitutes a willful, wanton, and intentional obstruction of justice and a deprivation of Plaintiff's due process rights.

Count V, against Defendant Monroe, alleges a state law claim for malicious prosecution. Count VI, against the Village of Manteno, alleges an indemnification claim pursuant to 75 ILCS 10/9-102.

## II. Legal Standard

Defendant Gagnon has moved to dismiss Count I and Defendant Forbes has moved to dismiss Counts II and IV of Plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (#18.) A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint, not to decide the merits of the case. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, the allegations in the complaint must, one, be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests,'" and, two, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 554, 555) (alteration omitted).

In considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the pleadings. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). The Court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *AnchorBank*, 649 F.3d at 614. Importantly, however, the Court does not accept as true mere legal conclusions, unsupported by factual allegations, or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

## III. Analysis

Defendant Gagnon argues that Count I, unreasonable seizure, should be dismissed for failure to state a claim upon which relief may be granted. Defendant Forbes maintains that Count II, failure to intervene, should be dismissed as a claim derivative of Count I. Defendant Forbes also contends that he should be dismissed from Count IV, violation of due process, because Plaintiff's allegations fail to state a claim or, alternatively, because Defendant Forbes is entitled to qualified immunity.

### A. Count I: Unreasonable Seizure (against Defendant Gagnon)

In Count I, Plaintiff alleges that: 1) Defendant Gagnon seized Plaintiff, 2) he "did not have a reasonable suspicion, based on specific and articulable facts, that Plaintiff was involved in criminal activity at the time" of the seizure, and 3) Defendant Gagnon had no other legal justification to seize Plaintiff. (#1, ¶¶ 96-98.) Plaintiff then alleges that this "seizure of Plaintiff without reasonable suspicion or any other legal justification violated her Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches." (#1, ¶ 99.) Defendant Gagnon argues that Plaintiff has "pled herself out of court" by alleging that the police were called to the gas station by its attendant and that Plaintiff was intoxicated in her vehicle at the time. (#18, ¶ 3.) He contends that these allegations show that he "had, at the very minimum, a reasonable suspicion to believe that Plaintiff had committed a crime or might commit a crime if left alone (i.e., driving under the influence)." (#19, p. 8.)

Plaintiff counters Defendant Gagnon's argument by pointing to the unreasonableness of the manner in which the seizure was conducted. Though she acknowledges that "it is arguable that it was reasonable to seize her based upon the fact she appeared intoxicated," she contends in her Response that the "arguably reasonable seizure quickly turned unreasonable" when Defendant Gagnon sexually assaulted her in his vehicle and at the police station. (#20, p. 3.) Though Plaintiff did not characterize her Fourth Amendment claim for unreasonable seizure in this way in her complaint, to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint "need not plead law, and it is not tied to one legal theory." *La Porte Cnty. Republican Cent. Comm. v. Bd. of Comm'rs of the Cnty. of La Porte*, 43 F.3d 1126, 1129 (7th Cir. 1994); *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."). Therefore, the Court will consider this alternative legal basis for Plaintiff's Fourth Amendment claim.

In *Illinois v. Caballes*, the Supreme Court confirmed that "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). The *Caballes* Court concluded that the underlying traffic

stop in that case was legitimate, and then framed the pertinent question in that case as whether the dog sniff performed during said traffic stop infringed the suspect's constitutionally protected interest in privacy. *Id*. at 408. Here, Plaintiff argues that her bodily integrity was unreasonably compromised by the manner in which the seizure was executed (i.e., by the two instances of alleged sexual assault). (#20, p. 4.) This amounts to a violation of Plaintiff's right to substantive due process. *See Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997). The Court agrees with Plaintiff that the facts, as alleged in the complaint, sufficiently state a claim that the manner in which the seizure was executed unreasonably infringed on Plaintiff's constitutionally-protected interest in bodily integrity and personal security, in violation of the Fourth Amendment prohibition on unreasonable search and seizure.

### B. Count II: Failure to Intervene (against Defendant Forbes)

In Count II, Plaintiff alleges that Defendant Forbes violated 42 U.S.C. § 1983 when he failed to intervene in the unreasonable seizure by Defendant Gagnon as alleged in Count I despite having an opportunity to do so. Defendant Forbes argues that Count II should be dismissed because Count I fails to state a claim for unreasonable seizure. As discussed above, Count I does state a claim for unreasonable seizure and, therefore, Defendant Forbes's argument is unpersuasive.

### C. Count IV: Due Process (against Defendant Forbes)

Defendant Forbes argues that Plaintiff's allegations do not support a due process claim against him and, therefore, he should be dismissed from Count IV. As he correctly points out, the complaint does not specify whether Plaintiff intends to make a substantive or a procedural due process claim. Plaintiff argues in her response that she has properly pled both a substantive and a procedural due process claim against Defendant Forbes. The Court will address these allegations in turn.

#### 1. Procedural Due Process

Plaintiff argues that the allegations in the complaint support a claim for a *Brady*-based procedural due process claim. She argues that Defendant Forbes could have prevented Plaintiff's indictment on felony charges if he had revealed that he had witnessed the sexual assault

allegedly committed by Defendant Gagnon. (#20, p. 6.) This, she argues, is in violation of *Brady v. Maryland*, in which the Supreme Court stated that the suppression of evidence by the prosecution violates due process if that evidence is (1) favorable to the accused and (2) "material to either guilt or punishment." 373 U.S. 83, 87 (1963). Defendant Forbes argues that there can be no *Brady* violation in this case, as the charges were ultimately dismissed before trial began.

The Court has previously reviewed a substantially similar claim made by Defendant Monroe. (#22, pp. 5-8.) In its review of Defendant Monroe's Motion to Dismiss, this Court concluded that the Seventh Circuit court "has not foreclosed the possibility that a *nolle prossed* or acquitted defendant could have a viable *Brady* claim." (#22, pp. 7-8.) Therefore, Plaintiff's allegations that Defendant Monroe violated her procedural due process rights by failing to disclose forensic reports that supported her sexual assault allegations constituted a plausible claim upon which relief can be granted for deprivation of her right to procedural due process. (#22, p. 8.) Similarly, here, Plaintiff alleges that Defendant Forbes violated her procedural due process rights by withholding his direct knowledge of Defendant Gagnon's actions, which resulted in prolonged proceedings. (#20, p. 6.) For the same reasons that the Court concluded that Plaintiff has sufficiently alleged a procedural due process violation against Defendant Monroe, the Court concludes here that the allegations in the complaint support a procedural due process claim against Defendant Forbes.

### 2. Substantive Due Process

Plaintiff contends that her allegations also support a claim that Defendant Forbes violated her substantive due process rights. Defendant Forbes raises no specific arguments as to why Plaintiff's allegations are insufficient in light of the controlling substantive due process law.

This Court reviewed the law on substantive due process in its analysis of Defendant Monroe's arguments for dismissal. (#22, pp. 8-9.) There, the Court concluded that Plaintiff had articulated a plausible claim upon which relief can be granted for violation of her substantive due process rights based on Defendant Monroe's failure to disclose the forensic report at issue. (#22, pp. 8-9.) Applying that same reasoning here, the Court finds that Defendant Forbes's alleged withholding of his direct knowledge of the sexual assault from the prosecution is sufficiently

7

arbitrary and irrational and sufficiently shocks the conscience to state a claim that Plaintiff's substantive due process rights were violated.

### 3. Qualified Immunity

Defendant Forbes next argues that he should be dismissed from Count IV because he is entitled to qualified immunity. He argues that a reasonable officer in his shoes would not have known that failing to report the alleged misconduct of another officer against a criminal suspect violates that person's due process rights. (#19, p. 11.) Again, this Court has previously addressed and rejected a similar argument from Defendant Monroe. (#22, p. 9-10.)

As the Court noted in response to Defendant Monroe's Motion to Dismiss, the pertinent question is whether the constitutional or statutory right allegedly violated was clearly established "at the time of the challenged conduct." (#22, p. 10.) For the same reasons the Court rejected Defendant Monroe's qualified immunity argument, the Court finds that qualified immunity does not shield Defendant Forbes from Plaintiff's due process claim because it was clearly established at the time of the investigation of Plaintiff's claims and during the grand jury proceedings that withholding exculpatory evidence from prosecutors prevents the prosecutors from complying with the obligations articulated in *Brady* and, therefore, violates the due process clause. (See #22, p. 10.) Accordingly, the doctrine of qualified immunity does not immunize Officer Forbes from suit and the Court recommends denying the motion to dismiss Plaintiff's due process claims against Defendant Forbes.

### IV.   Summary

For the reasons stated above, the Court recommends that Defendant Chadd Gagnon's Motion to Dismiss Count I and Defendant Jason Forbes' Motion to Dismiss Counts II & IV of the Complaint (#18) be **DENIED**. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) working days after being served with a copy of the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 7th day of February, 2014.

s/DAVID G. BERNTHAL
------------------------------
UNITED STATES MAGISTRATE JUDGE
